UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| GOLDMAN, SACHS & CO., | ) | |
|        Plaintiff, | ) | |
| | ) | 3:12-cv-00327-RCJ-WGC |
| vs. | ) | |
| | ) | |
| CITY OF RENO, | ) | **ORDER** |
| | ) | |
|        Defendant. | ) | |

This case arises out of the City of Reno's issuance of approximately $210 million of securities soon before the real estate and stock market crash of 2008 in order to fund various projects. Pending before the Court is a Motion to Dismiss the City of Reno's Counterclaims (ECF No. 71). For the reasons given herein, the Court denies the motion.

## I. FACTS AND PROCEDURAL HISTORY

In 2005, Defendant City of Reno (the "City") issued approximately $73 million in auction rate securities ("ARS"), in order to fund various projects, to be underwritten and brokered by Plaintiff Goldman, Sachs & Co. ("GS") pursuant to an October 19, 2005 agreement (the "2005 Underwriter Agreement") and an October 26, 2005 agreement (the "2005 Broker–Dealer Agreement"). (Compl. ¶¶ 12–13, June 18, 2012, ECF No. 1). In 2006, the City issued another approximately $137 million in ARS for similar purposes, again to be underwritten and brokered by GS pursuant to similar agreements (the "2006 Underwriter Agreement" and "2006

Broker–Dealer Agreement"). (*Id.* ¶¶ 18–20).  The Broker–Dealer Agreements contain forum selection clauses to the effect that "all actions and proceedings arising out of this Broker–Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court for the District of Nevada . . ." (*See* 2005 Broker–Dealer Agreement § 5.09, at 14, ECF No. 1-6; 2006 Broker–Dealer Agreement § 5.09, at 14, ECF No. 1-7).  The Broker–Dealer Agreements also contain merger and integration clauses to the effect that "the [Broker–Dealer Agreement] and the other agreements and instruments executed and delivered in connection with the issuance of the ARS, contain the entire agreement between the parties relating to the subject matter hereof, and there are no other representations." (*See* 2005 Broker–Dealer Agreement § 5.04, at 13, ECF No. 1-6; 2006 Broker–Dealer Agreement § 5.04, at 13, ECF No. 1-7).  Neither Broker–Dealer Agreement contains an arbitration clause.  Neither Underwriter Agreement contains either a forum selection clause or an arbitration clause.

On February 10, 2012, the City filed a complaint against GS with the Financial Industry Regulatory Authority ("FINRA"), alleging wrongdoing with respect to the 2005 and 2006 agreements. (Compl. ¶¶ 27–29).  GS sued the City in this Court, asking the Court to declare that FINRA was an inappropriate forum in light of the forum selection clauses in the Broker–Dealer Agreements and the lack of any arbitration clauses in either the Broker–Dealer Agreements or the Underwriter Agreements.  GS moved for a preliminary injunction against the FINRA proceedings.  The Court denied the motion, and GS consented to entry of final judgment.  A split panel of the Court of Appeals, noting that the question was close and that it was creating a split with the Fourth Circuit as to an interpretation of the forum selection clauses, reversed and remanded, ruling that the forum selection clauses in the Broker–Dealer Agreements superseded GS's obligation to arbitrate under FINRA Rule 12200. *See Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741–47 (9th Cir. 2014).  The Court of Appeals found that GS had an "overwhelming" probability of success on the merits but remanded for the Court to consider the

1    other preliminary injunction factors in the first instance. *See id.* at 747.  The parties entered into a
2    stipulation under which the City agreed not to contest that the remaining preliminary injunction
3    factors favored an injunction and would consent to a permanent injunction against the arbitration
4    if the Supreme Court denied its petition for a writ of certiorari or granted the petition and
5    affirmed the Court of Appeals.  The Supreme Court denied the City's petition.  The Court
6    ordered the City to answer and file any counterclaims.  The City answered and filed
7    counterclaims for breach of fiduciary duty, fraud, and negligent misrepresentation.  GS has
8    moved to dismiss the counterclaims as time-barred and for failure to state a claim.

9    **II.    LEGAL STANDARDS**

10           Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
11   claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of
12   what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47
13   (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action
14   that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule
15   12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720
16   F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for
17   failure to state a claim, dismissal is appropriate only when the complaint does not give the
18   defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell
19   Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is
20   sufficient to state a claim, the court will take all material allegations as true and construe them in
21   the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th
22   Cir. 1986).  The court, however, is not required to accept as true allegations that are merely
23   conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden
24   State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action
25   with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own

case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In other words, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but also must plead the facts of his own case so that the court can determine whether the plaintiff has any plausible basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

III.   ANALYSIS

GS argues that a three-year statute of limitations bars all of the counterclaims. If New York law applies to the counterclaims, a six-year limitations period applies. *See* N.Y. C.P.L.R. § 213(8). A three-year limitations period applies to all of the counterclaims if Nevada law

applies. *See* Nev. Rev. Stat. § 11.190(3)(d) ("Except as otherwise provided in NRS 112.230 [fraudulent transfers] and 166.170 [transfers to spendthrift trusts], an action for relief on the ground of fraud or mistake, but the cause of action in such a case shall be deemed to accrue upon the discovery by the aggrieved party of the facts constituting the fraud or mistake."); *Nev. State Bank v. Jamison Family P'ship*, 801 P.2d 1377, 1382 (Nev. 1990) ("A breach of fiduciary duty is fraud and, therefore, the three-year statute of limitation set forth in NRS 11.190(3)(d) is applicable."); *Meredith v. Weilburg*, No. 3:13-cv-277, 2013 WL 5658181, at * 5 (D. Nev. Oct. 15, 2013) (Jones, J.) (negligent misrepresentation).

The Court finds that Nevada's choice of law rules govern the tort claims in this case despite the contractual choice-of-law clause. *See Sutter Home Winery, Inc. v. Vintage Selections, Inc.*, 971 F.2d 401, 407 (9th Cir. 1992) ("Claims arising in tort are not ordinarily controlled by a contractual choice of law provision. Rather, they are decided according to the law of the forum state." (citation omitted)). None of the counterclaims are contractual claims. The City's tort claims are therefore governed by Nevada law, including Nevada's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Nevada courts apply the Restatement (Second) of Conflict of Laws to tort claims. *Gen. Motors Corp. v. Eighth Jud. Dist. Ct. of State of Nev. ex rel. Cnty. of Clark*, 134 P.3d 111, 116 (Nev. 2006). If a specific section of the Restatement (Second) applies, a court in Nevada applies that section. *Id.* All the counterclaims sound in fraud. Section 148 of the Restatement (Second) therefore applies:

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
>
> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case

       in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971). Subsection (1) does not apply, because it is unlikely GS made the allegedly false representations in Nevada. Under the subsection (2) factors, New York has the most significant relationship to the fraud claims. The City acted in reliance upon the allegedly false statements in Nevada. *See id.* § 148(2)(a). But the allegedly false statements were presumably made from New York via telephone, mail, email, or other electronic means. *See id.* § 148(2)(b)–(c). The City's associations are purely with Nevada; but GS's principal place of business is New York. *See id.* § 148(2)(d). There is no tangible thing that is the subject of the transaction. *See id.* § 148(2)(e). The City is to render its performance from Nevada, but this factor is of little weight where the performance consists solely of making payments that could be made from anywhere. *See id.* § 148(2)(f). The performance in this type of case is not inherently connected to any location. Considering these factors, the Court finds that New York law applies to the tort claims. The only factors that weigh significantly in either direction are the place from where GS allegedly made the fraudulent representations and the place where the City relied. Because the fraudulent statements themselves were made from New York, that state's law should control. The Restatement (Second) makes clear that the place where the fraudulent representations are made is more important (and is as important as the place of the tortious activity in a personal injury case) than the place of reliance and loss, which is

difficult to determine conceptually in contractual cases such as this one. *See id.* § 148 cmts. c, f, h.

The remaining question is whether the counterclaims were brought within six years of their accrual. Of course, the City cannot have first discovered the alleged wrongdoing any later than February 10, 2012, on which date it admittedly filed the FINRA complaint. (*See* Answer & Countercl. 2 ¶ 1, ECF No. 67 (citing Compl. ¶ 1 (alleging that the FINRA complaint was filed on February 10, 2012))). But that is well within six years of the filing of the Counterclaim. GS also argues that the City admitted in a previous briefing that it discovered the alleged fraud in 2008. But the Court finds that the alleged admission does not eliminate any genuine question of material fact on the issue. Anyway, New York law tolls limitations periods while arbitration is pending even if the claim is determined not to be arbitrable. *See* N.Y. C.P.L.R. § 204(b). In this case, tolling while the claims were before FINRA would save them even if the City had first discovered the underlying facts in 2008.

Finally, the Court will not dismiss the counterclaims on the merits at the pleadings stage. The City has sufficiently alleged that GS acted as a financial advisor and breached its attendant fiduciary duties by failing to disclose facts material to the way the auctions were conducted, i.e., its supporting-bid practices.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss the City of Reno's Counterclaims (ECF No. 71) is DENIED.

IT IS SO ORDERED.

Dated this 25th day of January, 2016.

_____
ROBERT C. JONES
United States District Judge